## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | |
|---|---|
| Devendrakumar R. Patel and Maaee LLC d/b/a Tailgaters Sports Bar & Grill,<br><br>Plaintiffs,<br><br>v.<br><br>A-M-H-D LLC d/b/a Tailgaters Sports Bar & Grill, AMHD Snookered LLC, VRA, LLC, TG Jake Investment LLC, AMHD Management Corporation, and AMHD Franchise Corporation,<br><br>Defendants. | Civil Action No. _____<br><br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs Devendrakumar R. Patel and Maaee LLC d/b/a Tailgaters Sports Bar & Grill (collectively, "Plaintiffs"), by and through their undersigned attorneys, bring this action by the filing of this Original Complaint against Defendants A-M-H-D LLC d/b/a Tailgaters Sports Bar & Grill, AMHD Snookered LLC, VRA, LLC, TG Jake Investment LLC, AMHD Management Corporation, and AMHD Franchise Corporation (collectively, "Defendants") requesting injunctive relief and damages for trademark infringement, unfair competition, and false designation of origin arising out of the unauthorized use of the marks "Tailgaters Sports Bar & Grill," "Tailgaters," and the  /  logos (collectively, the "Tailgaters Marks"), in connection with bar and restaurant services in North Texas.

### THE PARTIES

1.  Plaintiff Devendrakumar R. Patel ("Patel") is an individual residing and domiciled at 625 Raintree Circle, Coppell, Texas 75019.

2.  Plaintiff Maaee LLC d/b/a Tailgaters Sports Bar & Grill ("Maaee") is a Texas

limited liability company with its principal place of business located at 3100 Discovery Dr., Oak Point, Texas 75068. Maaee has continuously owned and operated a bar and restaurant called Tailgaters Sports Bar & Grill at 5605 FM 423, Frisco, Texas 75036 since 2014.

3.      On information and belief, Defendant A-M-H-D LLC d/b/a Tailgaters Sports Bar & Grill ("AMHD") is a Texas limited liability company with its principal place of business located at 4601 Hershey Ln., Plano, Texas 75024. On information and belief, AMHD owns and/or operates a restaurant and bar under the name Tailgaters Sports Bar & Grill at 16710 FM 423, Ste. 1000, Frisco, Texas 75034. On information and belief, AMHD may be served with process by serving its registered agent, Ankit Shah, at 4601 Hershey Ln., Plano, Texas 75024, or wherever its registered agent may be found.

4.      On information and belief, Defendant AMHD Snookered LLC ("AMHD Snookered") is a Texas limited liability company with its principal place of business located at 4601 Hershey Ln., Plano, Texas 75024. On information and belief, AMHD Snookered owns and/or operates a restaurant and bar under the name Tailgaters Sports Bar & Grill at 9550 Dallas Parkway, Frisco, Texas 75034. On information and belief, AMHD Snookered may be served with process by serving its registered agent, Ankit Shah, at 4601 Hershey Ln., Plano, Texas 75024, or wherever its registered agent may be found.

5.      On information and belief, Defendant VRA, LLC ("VRA") is a Texas limited liability company with its principal place of business located at 4601 Hershey Ln., Plano, Texas 75024. On information and belief, VRA owns and/or operates a restaurant and bar under the name Tailgaters Sports Bar & Grill at 960 FM 544, Wylie, Texas 75098. On information and belief, VRA may be served with process by serving its registered agent, Ankit Shah, at 4601 Hershey Ln., Plano, Texas 75024, or wherever its registered agent may be found.

6.     On information and belief, Defendant TG Jake Investment LLC ("TG Jake") is a Wyoming limited liability company with its principal place of business at 4601 Hershey Ln., Plano, Texas 75024. On information and belief, TG Jake owns and/or operates restaurants and bars under the name Tailgaters Sports Bar & Grill at one or more of the following locations: 3033 W. Parker Rd., Ste. 109, Plano, Texas 75023, 7215 Skillman St., Ste. 300, Dallas, TX 75231, and 10677 E. Northwest Highway, Ste. 400, Dallas, Texas 75238. On information and belief, TG Jake may be served with process by serving its registered agent in Texas, Ankit Shah, at 4601 Hershey Ln., Plano, Texas 75024, or, alternatively, by serving its registered agent in Wyoming, Registered Agent Inc, 30 N. Gould St., Ste. R, Sheridan, Wyoming 82801, or wherever its registered agents may be found.

7.     On information and belief, Defendant AMHD Management Corporation ("AMC") is a Texas corporation with its principal place of business located at 16710 FM 423, Ste. 1000, Frisco, Texas 75034. On information and belief, AMC serves as a parent and/or operational management corporation for AMHD, AMHD Snookered, VRA, and TG Jake. Upon information and belief, AMC may be served with process by serving its registered agent, Ankit Shah, at 16710 FM 423, Ste. 1000, Frisco, Texas 75034, or wherever its registered agent may be found.

8.     On information and belief, Defendant AMHD Franchise Corporation ("AFC") is a Texas corporation with its principal place of business located at 4601 Hershey Ln., Plano, Texas 75024. On information and belief, AFC has entered into franchise agreements with businesses in this District that own and/or operate restaurants and bars under the name Tailgaters Sports Bar & Grill. Upon information and belief, AFC may be served with process by serving its registered agent, A-M-H-D LLC, at 4601 Hershey Ln., Plano, Texas 75024, or wherever its registered agent may be found.

9.    On information and belief, AMHD, AMHD Snookered, VRA, TG Jake, AMC, and AFC are each directed and controlled by Ankit Shah ("Shah").

10.    On information and belief, AMHD, AMHD Snookered, VRA, TG Jake, AMC, and AFC are owned, managed, and controlled by Shah and operate as an integrated enterprise with common ownership and centralized management. On information and belief, Shah directs and controls the branding, marketing, and use of the Tailgaters Marks by each Defendant and causes each entity to act for the benefit of the others in the conduct alleged herein.

11.    On information and belief, each Defendant has participated in, authorized, ratified, or materially assisted the acts alleged herein, including the continued use of the Tailgaters Marks after revocation of permission and notice from Plaintiffs. Each Defendant acted in concert with the others and/or through agents, such that each is responsible for the wrongful acts of the others to the extent permitted by law.

## JURISDICTION AND VENUE

12.    This action arises under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and Texas common law. This Court has subject matter jurisdiction over Plaintiffs' Lanham Act claims pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1338, and supplemental jurisdiction over Plaintiffs' state-law claims under 28 U.S.C. § 1367.

13.    This Court has personal jurisdiction over the parties. Upon information and belief, Defendants are registered to conduct business in the State of Texas, maintain their principal places of business in this District, and have continuously and systematically availed themselves of the privileges and benefits of conducting business in the State of Texas by owning, operating, and/or franchising restaurants and bars in the State of Texas, including in this District. Further, Defendants advertise, market, sell, and/or offer for sale goods, services, and/or franchise rights in the State of Texas, including in this District, that are wrongfully associated with the Tailgaters Marks and have

infringed and continue to infringe Patel's senior rights in the Tailgaters Marks.

14.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) because one or more Defendants reside in this District and a substantial part of the events giving rise to this action have occurred and continue to occur in this District.

## FACTUAL ALLEGATIONS

### *Plaintiffs Acquired and Have Maintained Common Law Rights in the Tailgaters Marks*

15.     Tailgaters Sports Bar & Grill is a sports-bar restaurant concept founded by Patel in 2011.

16.     In 2011, Patel opened the first Tailgaters Sports Bar & Grill at 7777 Warren Parkway, Ste. 104, Frisco, Texas 75034 (the "Warren Parkway Tailgaters"). The Warren Parkway Tailgaters was originally owned and operated by Bavad LLC ("Bavad"), a Texas single-member limited liability company managed and controlled by Patel.

17.     In 2013, Patel opened a second Tailgaters Sports Bar & Grill location at 14831 Midway Road, Addison, Texas 75001 (the "Midway Road Tailgaters"). The Midway Road Tailgaters was originally owned and operated by Maavdi LLC ("Maavdi"), another Texas single-member limited liability company managed and controlled by Patel.

18.     In 2014, Patel opened a third Tailgaters Sports Bar & Grill location at 5605 FM 423, Frisco, Texas 75036 (the "FM 423 Tailgaters"). The FM 423 Tailgaters is owned and operated by Maaee, another single-member limited liability company managed and controlled by Patel.

19.     Patel subsequently relocated the Warren Parkway Tailgaters to 8908 Ohio Dr., Ste. 104, Plano, Texas 75024 (the "Ohio Drive Tailgaters"). The Ohio Drive Tailgaters was owned and operated by Maaee. Thereafter, Maaee began operating the Midway Road Tailgaters.

20.     Patel conceived of and adopted the "Tailgaters Sports Bar & Grill" and "Tailgaters" marks for use in connection with bar and restaurant services beginning in 2011. Over time, and

continuing through the present, Patel has also developed and used additional related logos, designs, and other source-identifying indicia in connection with the Tailgaters concept, including, for example:



21.    At all times material to this action, Patel has owned and exercised control over the Tailgaters Marks and the goodwill associated with the Tailgaters Marks. All use of the Tailgaters Marks by Patel-controlled entities, including Bavad, Maavdi, and Maaee, has been under Patel's direction and control and inured to Patel's benefit.

22.    The Warren Parkway Tailgaters, the Midway Road Tailgaters, the Ohio Drive Tailgaters, and the FM 423 Tailgaters used the Tailgaters Marks in commerce in connection with bar and restaurant services, including on signage, menus, advertisements, and promotional materials:

**SIGNAGE**



*Midway Road Tailgaters*



*Ohio Drive Tailgaters*



*FM 423 Tailgaters*

**MENUS**



**ADVERTISEMENTS AND PROMOTIONAL MATERIALS**







23.    Although the Warren Parkway Tailgaters, Midway Road Tailgaters, and Ohio Drive

Tailgaters ceased operations in 2016, 2017, and 2024, respectively, Maaee continues to operate the FM 423 Tailgaters and continues to use the Tailgaters Marks in commerce.

24.    Through continuous use of the Tailgaters Marks in commerce since 2011, Patel acquired senior common-law rights in the Tailgaters Marks in connection with bar and restaurant services, at least in North Texas.

25.    The Tailgaters Marks are distinctive and function as a source identifier for Plaintiffs' bar and restaurant services. To the extent any of the Tailgaters Marks are not deemed inherently distinctive, they have acquired distinctiveness and secondary meaning through Plaintiffs' longstanding, substantially exclusive, and continuous use of the Tailgaters Marks in North Texas.

26.    The Tailgaters Marks embody valuable goodwill owned by Patel. Maaee is an authorized user of the Tailgaters Marks in connection with the FM 423 Tailgaters location under Patel's direction and control. Maaee has developed substantial goodwill in its restaurant business at that location.

27.    As a result of the extensive and continuous use of the Tailgaters Marks in connection with the Warren Parkway Tailgaters, Midway Road Tailgaters, Ohio Drive Tailgaters, and FM 423 Tailgaters, consumers in North Texas have come to associate the Tailgaters Marks with the Tailgaters bar-and-restaurant business controlled by Patel as the source of bar and restaurant services.

28.    Patel has never assigned or transferred ownership of the Tailgaters Marks or the goodwill associated with the Tailgaters Marks to Shah or any Defendant. Any permission provided to Defendants to use the Tailgaters Marks was informal, limited in scope, non-exclusive, and revocable, and did not include any assignment of ownership, right to register the Tailgaters Marks,

9

or right to sublicense the Tailgaters Marks without Patel's express authorization.

*Plaintiffs Grant Defendants Limited Permission to Use the Tailgaters Marks*

29.    In 2019, Patel became interested in opening a new Tailgaters Sports Bar & Grill location at 16710 FM 423, Ste. 1000, Frisco, Texas 75034 (the "380 & 423 Tailgaters") and approached Shah about a potential business relationship concerning that location. On information and belief, Shah established AMHD in October 2019 to own and/or operate the 380 & 423 Tailgaters. No written partnership agreement exists between Plaintiffs and Shah or AMHD related to the 380 & 423 Tailgaters. Plaintiffs informally permitted AMHD to use the Tailgaters Marks solely in connection with operating the 380 & 423 Tailgaters. Any such permission was non-exclusive, limited to that location, informal in nature, and revocable at will. It did not include a transfer of ownership, assignment of rights, right to register the Tailgaters Marks, or right to sublicense the Tailgaters Marks to third parties.

30.    On information and belief, Shah purchased a restaurant and bar formerly known as Snookered Billiards & Bar at 9550 Dallas Parkway, Frisco, Texas 75034 (the "Snookered Tailgaters") in 2022. On information and belief, Shah established AMHD Snookered in October 2022 to own and/or operate the Snookered Tailgaters. No written partnership agreement exists between Plaintiffs and Shah or AMHD Snookered related to the Snookered Tailgaters. Plaintiffs informally permitted AMHD Snookered to use the Tailgaters Marks solely in connection with the Snookered Tailgaters. Any such permission was non-exclusive, limited to that location, informal in nature, and revocable at will. It did not include a transfer of ownership, assignment of rights, right to register the Tailgaters Marks, or right to sublicense the Tailgaters Marks to third parties.

31.    On information and belief, Shah purchased another restaurant and bar at 960 FM 544, Wylie, Texas 75098 (the "Wylie Tailgaters") in 2023. On information and belief, Shah directed VRA to own and/or operate the Wylie Tailgaters. No written partnership agreement exists

between Plaintiffs and Shah or VRA related to the Wylie Tailgaters. Plaintiffs informally permitted VRA to use the Tailgaters Marks solely in connection with the Wylie Tailgaters. Any such permission was non-exclusive, limited to that location, informal in nature, and revocable at will. It did not include a transfer of ownership, assignment of rights, right to register the Tailgaters Marks, or right to sublicense the Tailgaters Marks to third parties.

32.     Plaintiffs and Shah discussed and contemplated the potential franchising. Shah formed AFC as the vehicle for contemplated franchising efforts. Plaintiffs identified a potential location for a franchise at 12255 University Dr., Ste. 300, Frisco, TX 75035 (the "Coit & 380 Tailgaters"). Any use of the Tailgaters Marks by Defendants in connection with franchising activities was, at most, informal, limited in scope, contingent upon Patel's approval, and revocable, and did not include any assignment of ownership of the Tailgaters Marks, any right to register the Tailgaters Marks in Defendants' name, or any right to grant sublicenses without Plaintiffs' express consent.

33.     On information and belief, Shah purchased several former Jakes Gameday locations, including at 3033 W. Parker Rd., Ste. 109, Plano, Texas 75023 ("Parker Road Tailgaters"), 7215 Skillman St., Ste. 300, Dallas, TX 75231 ("Skillman Tailgaters"), and 10677 E. Northwest Highway, Ste. 400, Dallas, Texas 75238 ("Northwest Highway Tailgaters") (collectively, the "Jakes Gameday Tailgaters") in 2024. On information and belief, Shah established TG Jake in June 2024 to own and/or operate the Jakes Gameday Tailgaters. No written partnership agreement exists between Plaintiffs and Shah or TG Jake related to the Jakes Gameday Tailgaters. Plaintiffs informally permitted TG Jake to use the Tailgaters Marks solely in connection with the Jakes Gameday Tailgaters. Any such permission was non-exclusive, limited to that location, informal in nature, and revocable at will. It did not include a transfer of ownership,

assignment of rights, right to register the Tailgaters Marks, or right to sublicense the Tailgaters Marks to third parties.

34.     On information and belief, at all relevant times, Defendants understood that Patel owned the Tailgaters Marks and that any use of the Tailgaters Marks by Defendants was contingent upon Patel's continued consent and authorization.

### *Defendants Attempt to Claim Ownership and Expand Use of the Tailgaters Marks*

35.     On information and belief, on July 8, 2022, without Plaintiffs' consent, AMHD filed a federal trademark application for one of the Tailgaters Marks with the U.S. Patent and Trademark Office ("USPTO"). On information and belief, AMHD's application sought, without authorization or permission of Plaintiffs, to register "Tailgaters Sports Bar & Grill" as a federal trademark in its name. On information and belief, the USPTO assigned Serial No. 97494531 to AMHD's federal trademark application for the "Tailgaters Sports Bar & Grill" mark.

36.     On information and belief, AMHD entered into a Consent Agreement with Fun Land Opco, LLC ("Fun Land"), dated November 11, 2023 (the "2023 Consent Agreement"), in which AMHD falsely and/or fraudulently stated that it "owns U.S. Trademark Application Serial No. No. [sic.] 97494531 for the mark TAILGATERS SPORTS BAR & GRILL used in connection with Sports Bar and Grill in International Class 043" and purported to make agreements regarding the future use of the Tailgaters Sports Bar & Grill mark. On information and belief, AMHD entered into a second Consent Agreement with Fun Land on February 2, 2025 (the "2025 Consent Agreement"), in which AMHD again falsely and/or fraudulently stated that it "owns U.S. Trademark Application Serial No. No. [sic.] 97494531 for the mark TAILGATERS SPORTS BAR & GRILL used in connection with Sports Bar and Grill in International Class 043" and purported to make agreements regarding the future use of the Tailgaters Sports Bar & Grill mark.

37.     On information and belief, AMHD amended its trademark application on

February 2, 2026, without authorization or permission of Plaintiffs, to state that "[t]he mark was first used by the applicant, or the applicant's related company, licensee, or predecessor in interest at least as early as 02/01/2023, and first used in commerce at least as early as 02/01/2023, and is now in use in such commerce." On information and belief, AMHD's trademark application is still pending with the USPTO.

38.     On information and belief, without Plaintiffs' consent, AFC entered into a franchise agreement with Subhadra Enterprises LLC ("Subhadra") to operate one of the Jakes Gameday Tailgaters. On information and belief, the franchise agreement between AFC and Subhadra purports to grant Subhadra an unauthorized license to use one or more of the Tailgaters Marks at one of the Jakes Gameday Tailgaters locations. Plaintiffs never authorized Subhadra to use the Tailgaters Marks.

39.     On information and belief, without Plaintiffs' consent, AFC entered into a franchise agreement with North Texas Food and Beverage LLC ("NTX Food & Beverage") to open and operate a restaurant and bar at 4150 Eldorado Parkway, Ste. 800, McKinney, Texas 75070 (the "McKinney Tailgaters"). On information and belief, the franchise agreement between AFC and NTX Food & Beverage purports to grant NTX Food & Beverage an unauthorized license to use one or more of the Tailgaters Marks at the McKinney Tailgaters. Plaintiffs never authorized NTX Food & Beverage to use the Tailgaters Marks.

40.     On November 22, 2024, AFC filed a lawsuit styled *AMHD Franchise Corporation v. Lullana LLC, Hersh Lulla, and Dishali Patel*, Cause No. 24-11102-431, in the 431st Judicial District, Denton County, Texas (the "Lullana Case"). In an amended petition filed on December 5, 2024, AFC alleged, without authorization or consent of Plaintiffs, that it "is the senior user of the following marks, which are eligible for protection: (1) 'Tailgaters'; (2) 'Tailgaters Sports Bar &

Grill';  and  (3)  ."

41.    Any permission granted to Defendants to use the Tailgaters Marks, if any, was limited, non-exclusive, non-transferable, and terminable at will, and did not include any right to register the Tailgaters Marks, sublicense them, or claim ownership of them.

***Defendants Continue to Use the Tailgaters Marks After Revocation of Permission***

42.    Beginning no later than June 26, 2025, Patel expressly and unequivocally revoked any prior permission granted to Defendants to use the Tailgaters Marks in any capacity. In written notices sent on June 26, 2025, July 15, 2025, October 8, 2025, and January 30, 2026, Plaintiffs demanded that Defendants immediately cease using, franchising, sublicensing, and asserting ownership of the Tailgaters Marks. Despite multiple written notices, Defendants have refused to comply and have continued their unauthorized use of the Tailgaters Marks.

43.    On information and belief, Defendants know that Patel has senior rights to the Tailgaters Marks vis-à-vis Defendants and that Defendants do not have permission from Plaintiffs to continue using the Tailgaters Marks.

44.    Despite Plaintiffs' repeated demands that Defendants cease using the Tailgaters Marks, Defendants have continued to use the Tailgaters Marks (or confusingly similar marks) in interstate commerce after June 26, 2025 in connection with the 380 & 423 Tailgaters, Snookered Tailgaters, Wylie Tailgaters, Coit & 380 Tailgaters, Parker Road Tailgaters, Skillman Tailgaters (until that location ceased operations in September 2025), Northwest Highway Tailgaters, and McKinney Tailgaters, including, on information and belief, on signage, menus, advertisements, and promotional materials through Defendants' website, www.tailgaterstx.com (last visited

Feb. 20, 2026), Linktree,[1] and social media accounts such as Facebook[2] and Instagram[3]:

## SIGNAGE



*Tailgaters 380 & 423*



*Tailgaters Snookered*

---

[1] https://linktr.ee/tailgaters?fbclid=Iwc3NjcAPnUO5leHRuA2FlbQIxMABzcnRjBmFwcF9pZA8xNzM4NDc2NDI2NzAzNzAAAR56PHHEy3GUuc9L2LVmuN-qi9A4KBJW4fx5z1JAO7hEYv9rfl3_zodrcL1p7g_aem_MfbYZYLAloNIIfa32MTCsw (last visited Feb. 20, 2026).

[2] https://www.facebook.com/tailgaterstx (last visited Feb. 20, 2026);
https://www.facebook.com/profile.php?id=61570567421763 (last visited Feb. 20, 2026);
https://www.facebook.com/profile.php?id=61570965840197 (last visited Feb. 20, 2026);
https://www.facebook.com/profile.php?id=61568461090965 (last visited Feb. 20, 2026);
https://www.facebook.com/profile.php?id=61568696489977 (last visited Feb. 20, 2026);
https://www.facebook.com/profile.php?id=61570927771944 (last visited Feb. 20, 2026);
https://www.facebook.com/profile.php?id=61570927771944 (last visited Feb. 20, 2026).

[3] https://www.instagram.com/tailgaters380/ (last visited Feb. 20, 2026);
https://www.instagram.com/tailgaters_snookered (last visited Feb. 20, 2026);
https://www.instagram.com/tailgaters_plano (last visited Feb. 20, 2026);
https://www.instagram.com/tailgaters_gameday (last visited Feb. 20, 2026);
https://www.instagram.com/tailgaters_mckinney (last visited Feb. 20, 2026);
https://www.instagram.com/tailgaters_lakehighlands (last visited Feb. 20, 2026);
https://www.instagram.com/tailgaters_wylie (last visited Feb. 20, 2026).



*Tailgaters Wylie*



*Tailgaters Parker Road*



*Skillman Tailgaters*



*Northwest Highway Tailgaters*



*McKinney Tailgaters*

**MENUS**



**ADVERTISEMENTS AND PROMOTIONAL MATERIALS**









**WEBSITE**



45.     On information and belief, despite their prior knowledge of Patel's senior rights in the Tailgaters Marks, and Plaintiffs' repeated demands that Defendants cease using the Tailgaters Marks after June 26, 2025, AMHD continues to seek federal trademark protection for the "Tailgaters Sports Bar & Grill" mark, and AFC continues to franchise and/or offer unauthorized franchising opportunities using the Tailgaters Marks (or confusingly similar marks) in interstate commerce, including through the www.tailgaterstx.com website:



46.     The marks on the signage, menus, advertisements, and promotional materials used

by Defendants are virtually identical, or at the very least, confusingly similar, to the Tailgaters Marks in sight, sound, meaning, and commercial impression.

47.     Defendants use the Tailgaters Marks (or confusingly similar marks) to market, promote, sell, and offer for sale goods and services in North Texas that are nearly identical (if not identical) to the goods and services promoted, marketed, sold, and offered for sale by Plaintiffs. Specifically, Plaintiffs and Defendants both promote, market, sell, and offer for sale food and beverage services in restaurants and bars.

48.     On information and belief, Defendants market, sell, and offer for sale the same type of goods and services in the same channels of trade and to the same consumers — consumers of bar and restaurant services — targeted by Plaintiffs.

49.     Defendants' continued use of the Tailgaters Marks (or confusingly similar marks) is a blatant, willful attempt to improperly capitalize on the valuable goodwill embodied in the Tailgaters Marks.

50.     On information and belief, Defendants' continued advertising, marketing, promotion, offer for sale, and sale of goods and services in connection with the Tailgaters Marks (or confusingly similar marks) has caused and will continue to cause a likelihood of confusion in the marketplace among consumers as to the source, sponsorship, affiliation, or endorsement of the goods and services offered by Defendants, resulting in damage to Plaintiffs, their business, and the goodwill and reputation associated with the Tailgaters Marks.

51.     On information and belief, consumers purchasing goods and services from Defendants are likely to mistakenly believe that such goods and services originate from, or are associated with, connected to, affiliated with, or related to Plaintiffs.

52.     Defendants' continued infringement of the Tailgaters Marks is willful and in bad

faith.

53.     Maaee, as the current operator of the FM 423 Tailgaters location, has suffered and continues to suffer commercial injury, loss of goodwill, and direct competitive harm at the FM 423 location as a result of Defendants' unauthorized use of the Tailgaters Marks after June 26, 2025.

**COUNT ONE**
**VIOLATION OF THE LANHAM ACT, SECTION 43 (15 U.S.C. § 1125(a))**

54.     Plaintiffs repeat, reallege, and incorporate by reference Paragraphs 1–53 above as if fully set forth herein.

55.     The Tailgaters Marks are valid and protectable under Section 43(a) of the Lanham Act because they have inherent distinctiveness and/or secondary meaning.

56.     Beginning no later than June 26, 2025, after Patel expressly revoked any prior permission to use the Tailgaters Marks, Defendants continued to use the Tailgaters Marks (or confusingly similar marks) in connection with the promotion, marketing, sale, and offering for sale in interstate commerce of (1) goods and services at bars and restaurants and (2) bar and restaurant franchises.

57.     Defendants' continued unauthorized use of the Tailgaters Marks (or confusingly similar marks) and derivations thereof after June 26, 2025 involves interstate commerce.

58.     Through Defendants' knowing and intentional unauthorized use of the Tailgaters Marks (or confusingly similar marks) after June 26, 2025, Defendants have falsely designated and continue to falsely designate their goods and services as being authorized by Plaintiffs and affiliated with those of Plaintiffs.

59.     Defendants' continued unauthorized use of the Tailgaters Marks (or confusingly similar marks) after June 26, 2025 is likely to cause confusion, mistake, or deception in that actual and potential customers are likely to erroneously believe that Defendants' goods and services are

provided by, sponsored by, approved by, licensed by, affiliated with, or emanate from Plaintiffs.

60.    The deception caused by Defendants' continued unauthorized use of the Tailgaters Marks (or confusingly similar marks) after June 26, 2025 is material in that it is likely to influence consumers' purchasing decisions by suggesting that Defendants are affiliated with Plaintiffs and legally authorized to use the Tailgaters Marks.

61.    On information and belief, Defendants' continued unauthorized use of the Tailgaters Marks (or confusingly similar marks) after June 26, 2025 constitutes the use in connection with goods and services of a false designation of origin, or a false or misleading description and representations of fact, which has caused or is likely to cause confusion, or has caused and is likely to cause mistake, or has deceived or is likely to deceive as to the affiliation, connection, or association of Plaintiffs, or as to the origin, sponsorship, or approval of Defendants' goods sold, marketed, and/or offered for sale in connection with the Tailgaters Marks or reproductions, copies, or colorable variations thereof.

62.    By making continued unauthorized use of the Tailgaters Marks (or confusingly similar marks) in interstate commerce after June 26, 2025, Defendants' activities, as alleged herein, constitute unfair competition, reverse passing off, false designation of origin, trademark infringement, and false description and representation in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

63.    On information and belief, Defendants' continued unauthorized use of the Tailgaters Marks after June 26, 2025 is malicious, intentional, and willful.

64.    As a direct and proximate result of Defendants' continued unauthorized use of the Tailgaters Marks after June 26, 2025, Plaintiffs have suffered damages, including loss of goodwill and competitive harm to the FM 423 Tailgaters operated by Maaee, and therefore assert a claim

against Defendants under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

## COUNT TWO
## TRADEMARK INFRINGEMENT UNDER TEXAS COMMON LAW

65.     Plaintiffs repeat, reallege, and incorporate by reference Paragraphs 1–64 above as if fully set forth herein.

66.     The Tailgaters Marks are eligible for trademark protection under Texas common law because they have inherent distinctiveness and/or secondary meaning.

67.     Patel has continuously used, and authorized related entities under his control to use, the Tailgaters Marks in commerce in Texas in connection with bar and restaurant services since 2011 and, accordingly, has established common law trademark rights in the Tailgaters Marks.

68.     Beginning no later than June 26, 2025, after Patel expressly revoked any prior permission to use the Tailgaters Marks, Defendants continued to use the Tailgaters Marks (or confusingly similar marks) in connection with the promotion, marketing, sale, and offering for sale in Texas of (1) goods and services at bars and restaurants and (2) bar and restaurant franchises.

69.     Defendants' continued unauthorized use of the Tailgaters Marks (or confusingly similar marks) after June 26, 2025 is likely to cause confusion, mistake, or deception in that actual and potential customers are likely to erroneously believe that Defendants' goods and services are provided by, sponsored by, approved by, licensed by, affiliated with, or emanate from Plaintiffs.

70.     The deception caused by Defendants' continued unauthorized use of the Tailgaters Marks (or confusingly similar marks) after June 26, 2025 is material in that it is likely to influence consumers' purchasing decisions by suggesting that Defendants are affiliated with Plaintiffs and legally authorized to use the Tailgaters Marks.

71.     Defendants' continued unauthorized use in commerce of the Tailgaters Marks (or confusingly similar marks) in association with Defendants' goods and services in Texas after June

26, 2025 constitutes infringement of Patel's common law trademark rights and misappropriates the goodwill associated with the Tailgaters Marks and is likely to cause confusion among the relevant consuming public.

72.    Defendants were aware, and at a minimum had actual notice by June 26, 2025, of Patel's rights in the Tailgaters Marks.

73.    Defendants' continued unauthorized use in commerce of the Tailgaters Marks (or confusingly similar marks) in association with Defendants' goods and services in Texas after June 26, 2025 constitutes willful infringement of Plaintiffs' rights in the Tailgaters Marks.

74.    As a direct and proximate result of Defendants' continued unauthorized use of the Tailgaters Marks after June 26, 2025, Plaintiffs have suffered damages, including loss of goodwill and competitive harm to the FM 423 Tailgaters operated by Maaee, and therefore assert a claim against Defendants for trademark infringement under Texas common law.

**COUNT THREE**
**PALMING OFF UNDER TEXAS COMMON LAW**

75.    Plaintiffs repeat, reallege, and incorporate by reference Paragraphs 1–74 above as if fully set forth herein.

76.    The Tailgaters Marks are eligible for protection under Texas common law because they have inherent distinctiveness and/or secondary meaning.

77.    Patel has continuously used, and authorized related entities under his control to use, the Tailgaters Marks in commerce in Texas in connection with bar and restaurant services since 2011 and, accordingly, has established rights in the Tailgaters Marks under Texas common law.

78.    Beginning no later than June 26, 2025, after Patel expressly revoked any prior permission to use the Tailgaters Marks, Defendants continued to use the Tailgaters Marks (or confusingly similar marks) in connection with the promotion, marketing, sale, and offering for sale

in Texas of (1) goods and services at bars and restaurants and (2) bar and restaurant franchises.

79.     Because of the similarity between the Tailgaters Marks and marks used by Defendants, Defendants' continued unauthorized use of the Tailgaters Marks (or confusingly similar marks) after June 26, 2025 is likely to cause confusion, mistake, or deception in that actual and potential customers are likely to erroneously believe that Defendants' goods and services are provided by, sponsored by, approved by, licensed by, affiliated with, or emanate from Plaintiffs.

80.     The deception caused by Defendants' continued unauthorized use of the Tailgaters Marks (or confusingly similar marks) after June 26, 2025 is material in that it is likely to influence consumers' purchasing decisions by suggesting that Defendants are affiliated with Plaintiffs and legally authorized to use the Tailgaters Marks.

81.     Defendants' continued unauthorized use in commerce of the Tailgaters Marks (or confusingly similar marks) in association with Defendants' goods and services in Texas after June 26, 2025 constitutes palming off and unfair competition under Texas common law by misrepresenting Defendants' goods and services as affiliated with or authorized by Plaintiffs.

82.     As a direct and proximate result of Defendants' continued unauthorized use of the Tailgaters Marks after June 26, 2025, Plaintiffs have suffered damages and therefore assert a claim against Defendants for palming off under Texas common law.

### COUNT FOUR
### UNFAIR COMPETITION BY MISAPPROPRIATION UNDER TEXAS COMMON LAW

83.     Plaintiffs repeat, reallege, and incorporate by reference Paragraphs 1–82 above as if fully set forth herein.

84.     Patel has continuously used, and authorized related entities under his control to use, the Tailgaters Marks in commerce in Texas in connection with bar and restaurant services since 2011 and, accordingly, has established rights in the Tailgaters Marks under Texas common law.

85.     The Tailgaters Marks were created and developed through the substantial time, labor, skill, and expense of Patel and his controlled entities.

86.     Beginning no later than June 26, 2025, after Patel expressly revoked any prior permission to use the Tailgaters Marks, Defendants continued to use the Tailgaters Marks (or confusingly similar marks) in connection with the promotion, marketing, sale, and offering for sale in Texas of (1) goods and services at bars and restaurants and (2) bar and restaurant franchises.

87.     The continued unauthorized use of the Tailgaters Marks by Defendants after June 26, 2025 gave Defendants a special competitive advantage by allowing them to capitalize on the goodwill and market recognition developed by Plaintiffs without incurring the substantial time and expense required to create that goodwill and market recognition.

88.     As a direct and proximate result of Defendants' continued unauthorized use of the Tailgaters Marks and unfair competition through their misappropriation of the Tailgaters Marks after June 26, 2025, Plaintiffs have suffered commercial damages and therefore assert a claim against Defendants for unfair competition by misappropriation under Texas common law.

## COUNT FIVE
## CIVIL CONSPIRACY UNDER TEXAS COMMON LAW

89.     Plaintiffs repeat, reallege, and incorporate by reference Paragraphs 1–88 above as if fully set forth herein.

90.     All Defendants were a member of a combination of two or more persons.

91.     The object of the combination was to accomplish an unlawful purpose, namely, the unlawful use by Defendants of the Tailgaters Marks after receiving notice from Plaintiffs that Defendants are not permitted to use the Tailgaters Marks, and by misappropriating the Tailgaters Marks and passing off their goods and services as belonging to Plaintiffs and their business so that Defendants could unfairly compete against Plaintiffs and harm and diminish Plaintiffs' business.

92.     Defendants had a meeting of the minds on this object and course of action, and Defendants committed unlawful and overt actions of continuing to use the Tailgaters Marks to advertise their business after June 26, 2025, to further the object of the course of action.

93.     As a direct and proximate result of Defendants' wrongful actions, Plaintiffs have suffered damages and therefore assert a claim against Defendants for civil conspiracy under Texas common law.

## COUNT SIX
## UNJUST ENRICHMENT UNDER TEXAS COMMON LAW

94.     Plaintiffs repeat, reallege, and incorporate by reference Paragraphs 1–93 above as if fully set forth herein.

95.     Defendants knew that their unauthorized use of the Tailgaters Marks (or confusingly similar marks) after June 26, 2025 would result in a benefit to Defendants.

96.     Defendants made unjust profits from the sale of goods and services by conducting transactions with consumers and businesses relying on the reputation and goodwill associated with the Tailgaters Marks after June 26, 2025.

97.     Defendants' conduct and actions set forth above constitute unjust enrichment under the common law of Texas.

98.     Plaintiffs are thus entitled to disgorgement of the unjust profits made by Defendants.

## COUNT SEVEN
## DECLARATORY JUDGMENT

99.     Plaintiffs repeat, reallege, and incorporate by reference Paragraphs 1–98 above as if fully set forth herein.

100.     This is a claim for declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201.

101.    Plaintiffs seek a declaratory judgment that Patel has senior rights in the Tailgaters Marks vis-à-vis Defendants, that Defendants do not own the rights, title, and interest in the Tailgaters Marks, and that Defendants have no current right to use the Tailgaters Marks.

102.    An actual justiciable case or controversy exists between Plaintiffs and Defendants regarding Plaintiffs' ownership of the Tailgaters Marks and Defendants' current right to use the Tailgaters Marks.

103.    Plaintiffs will suffer financial and irreparable damage if there is no declaratory relief awarded because, without such relief, Defendants may continue to use the Tailgaters Marks without any legal authority to do so, may continue to create confusion in the marketplace as to who actually operates Defendants' businesses and who owns the Tailgaters Marks, and may continue to deceive the USPTO and potential franchisees by wrongfully asserting that Defendants own the Tailgaters Marks.

104.    Plaintiffs have been legally injured and will continue to be injured and damaged without declaratory relief from the Court.

## <u>DAMAGES</u>

105.    Plaintiffs repeat, reallege, and incorporate by reference Paragraphs 1–104 above as if fully set forth herein.

106.    As a direct and proximate result of Defendants' conduct after June 26, 2025, Plaintiffs have suffered and plead for the following damages:

      a.    Actual damages;

      b.    Punitive damages;

      c.    Lost profits;

      d.    Disgorgement of Defendants' profits; and

      e.    Reasonable royalties.

107.    On account of Defendants' fraudulent, malicious, and/or grossly negligent conduct, including, but not limited to, their false and/or fraudulent claims of ownership in the Tailgaters Marks in the Lullana Case and their false and/or fraudulent claims of ownership in the Tailgaters Marks in filings with the USPTO, Plaintiffs are entitled to exemplary damages under Tex. Civ. Prac. & Rem. Code §§ 41.002 and 41.003.

## ATTORNEYS' FEES AND COSTS

108.    Plaintiffs repeat, reallege, and incorporate by reference Paragraphs 1–107 above as if fully set forth herein.

109.    Because Defendants' unlawful conduct was malicious, intentional, deliberate, and willful, this case is exceptional under 15 U.S.C. § 1117(a). Accordingly, Plaintiffs are entitled to an award of attorneys' fees under 15 U.S.C. § 1117(a).

110.    Plaintiffs are also entitled to an award of reasonable and necessary attorneys' fees under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02.

## CONDITIONS PRECEDENT

111.    All conditions precedent to Plaintiffs' right to recovery on the causes of action pleaded herein have been performed, already occurred, or are not applicable to Plaintiffs' ability to bring this action.

## JURY TRIAL DEMAND

112.    Plaintiffs demand a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

113.    Plaintiffs respectfully request that the Court enter judgment in Plaintiffs' favor against Defendants jointly and severally as follows:

a.    A judgment declaring that Patel has senior rights in the Tailgaters Marks vis-à-

vis Defendants, that Defendants do not own the rights, title, and interest in the Tailgaters Marks, and that Defendants have no current right to use the Tailgaters Marks;

b.  A permanent injunction enjoining Defendants, their employees, agents, officers, directors, attorneys, representatives, successors, affiliates, subsidiaries and assigns, and all those in concert or participation with any of them, from:

    i.  advertising, marketing, selling, and/or offering for sale any good, service, or franchise right using any mark that imitates or is confusingly similar to the Tailgaters Marks, including, without limitation, any of the Tailgaters Marks alone or in combination with any other term(s), word(s), name(s), logo(s), symbol(s), designation(s), and/or design(s) in any manner whatsoever; and

    ii.  applying for, continuing the prosecution of an application for, any trademark rights in, or otherwise asserting ownership of any mark that imitates or is confusingly similar to the Tailgaters Marks, including, without limitation, any of the Tailgaters Marks alone or in combination with any other term(s), word(s), name(s), logo(s), symbol(s), designation(s), and/or design(s) in any manner whatsoever;

c.  An order directing Defendants to deliver up for impoundment and destruction all materials and matter in their possession, custody, or control that infringe the Tailgaters Marks;

d.  An order directing that Defendants file with the Court and serve upon counsel for Plaintiffs within thirty (30) days after entry of such order or judgment, a

report in writing and under oath setting forth in detail the manner and form in which Defendants have complied with any such order that they deliver up for impoundment and destruction all materials and matter in their possession, custody, or control that infringe the Tailgaters Marks;

e.   An award of damages, in an amount to be proven at trial, for Defendants' violations of Section 43(a) of the Lanham Act, infringement of the Tailgaters Marks, palming off, and unfair competition by misappropriation, such damages including Plaintiffs' actual damages, the profits attributable to Defendants' infringement, Plaintiffs' costs and reasonable attorneys' fees, and any enhancements that the Court finds to be reasonable;

f.   An award of damages to compensate Plaintiffs for Defendants' unjust enrichment;

g.   An order awarding Plaintiffs punitive damages on account of Defendants' willful violations of law;

h.   An order awarding Plaintiffs prejudgment and post-judgment interest at the highest rate permitted by law; and

i.   Any other relief in equity or law to which Plaintiffs are entitled and/or that the Court deems just and proper.

Dated: February 23, 2026                    Respectfully submitted,

                                            By: */s/ Daniel F. Olejko*
                                                Daniel F. Olejko (Lead Counsel)
                                                Texas Bar No. 24108897
                                                Abby D. Merrill
                                                Texas Bar No. 24130865

                                            BRAGALONE OLEJKO SAAD PC
                                            901 Main St., Ste. 3800
                                            Dallas, TX 75202
                                            Tel.: (214) 785-6670
                                            Fax: (214) 785-6680
                                            dolejko@bosfirm.com
                                            amerrill@bosfirm.com

                                            **ATTORNEYS FOR PLAINTIFFS
                                            DEVENDRAKUMAR R. PATEL AND
                                            MAAEE LLC,  d/b/a TAILGATERS
                                            SPORTS BAR & GRILL**